## Michael Bard's Estate.

1. Where a widow refuses to take under a will, her dower and share of the personal estate are paramount to the will, and in case of a deficiency afterwards of personal assets the general legacies must abate proportionably, unless some priority be established, the onus of which is on the claimant.

2. Real estate devised being subject to the dower of a renouncing widow is not to be taken into consideration, where the widow's refusal will not leave enough to pay legacies in full.

3. A will under which the widow refused to take construed, with reference to the abatement of legacies.

May 5th 1868.    Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Appeal from the decree of the Orphans' Court of *Lancaster county* distributing the estate of Michael Bard, deceased: To May Term 1868.

The appeal was taken by Anne Brubaker, Ecedora Townsley and Susanna Drybread, who were daughters of the decedent and legatees under his will.

The decedent died on the 11th of May 1865, leaving a will dated April 23d in that year. He left a widow, Martha Bard and five children of a former marriage, viz.: Anne, the wife of Roland Brubaker; Ecedora, the wife of John Townsley; Susanna, the wife of William Drybread; Jefferson S. Bard and William M. Bard; both sons were minors at the father's death, William being the youngest.

The testator left considerable real estate; the amount of his personal estate according to the report of the auditors was $26,327.48. He made provision for his widow out of his real and personal estate. His will contained these further dispositions:

"3. I direct that if my son Jefferson gets married, or wishes to farm for himself, before William is of age, my executors shall buy a farm for him some place in the neighborhood, which, in the whole, shall be about equal in value to my mansion place, and pay the same out of my estate; and in that case, if there should not

[Bard's Estate.]

be sufficient funds on hand besides what is hereinafter bequeathed, for the use of my daughters, my executors shall sell my brick-house and lot in New Holland," &c.

" 4. I give and devise my mansion place or farm, &c., unto my son William, to pass into his hands when he arrives at twenty-one years of age, subject to the following reservations of my wife, &c. * * * And in the case of the death of my said son William before he is twenty-one years old, and without leaving issue, I give and devise my said mansion farm to my son Jefferson, his heirs and assigns, subject to my wife's rights," &c.

He then gave other real estate to his two sons as tenants in common; and also gave some real estate to another devisee.

" 7. I give to my executors in trust for the use of my daughter Annie and her issue, the sum of four thousand dollars, the interest of which at five per cent., shall be annually added to the principal, so long as her present husband shall live, unless her death should sooner occur; but in case she becomes a widow, then my executors shall annually, on the first day of April, pay the interest of the preceding year to her; and at her death, if she leaves issue, or the descendants of such, the principal sum, with the accumulated interest, shall be paid to such issue or descendants.

" 8. I give to my executors in trust, for the use of my two daughters, Ecedora and Susanna, each the sum of five thousand dollars, the interest of which, at five per cent., shall be annually on the first day of April paid to them; and at the death of either, the principal, with its accumulated interest, shall be paid to the issue of such decedents, or the descendants of such issue. And the taxes or expenses that may be levied or put upon such money, held in trust for my said daughters, shall be annually deducted from the interest, by my executors, before the same is paid over or added to the principal. And in case either of my said daughters should die without leaving issue, or the descendants of such, the amount held in trust by my executors for such descendants, with any unpaid interest, shall, as soon after the death of such daughter as conveniently can be done, be distributed in equal shares among my other children, or the descendants of such who may be dead; and the share, coming to either of my other daughters, shall be held in trust by my executors in the same manner, and so paid out as aforesaid."

After making a number of other provisions he provided:—

" 17. I direct that after all the foregoing bequests are carried out, and all costs and expenses paid, then the balance remaining in the hands of my executors at the death of my wife, or at the time of my son William will become of age, or in case of his death the time he would have become twenty-one years old, whichever may last happen, shall be divided among my children in equal shares; and if any of them are dead the descendants of such shall have

the parent's share; and such shares of my residuary estate so coming to my daughters shall be held by my executors in trust with the same rate of interest in the same manner, and so paid as the hereinbefore specified bequests to them respectively are held and paid during their respective lives, and at their death as set forth in the 7th and 8th items of this my will."

He appointed his wife Martha, C. S. Hoffman and E. G. Groff executors of his will.

The widow renounced the provisions for her under the will and claimed her dower in the real estate at common law and one-third of the personal estate absolutely, under the Act of Assembly. In consequence, the personal estate was insufficient to pay for Jefferson's farm and the legacies of the daughters in full.

The auditors reported that all the *devises* and *legacies* must abate pro ratâ. They therefore put a valuation on the farm devised to William, and the other real estate estimated the amount to be appropriated to Jefferson at the same sum; and awarded distribution at the rate of 74¼ per cent.

The three daughters excepted to the report, which was confirmed by the court. From this confirmation the daughters appealed, and assigned the confirmation of the report for error.

*E. H. Yundt* and *I. E. Heister*, for appellants, cited Duncan v. Alt, 3 Penna. Rep. 384; Lenni v. Lenni, 2 Ves., Sr. 415; Loomis's Appeal, 10 Barr 387.

*W. W. Brown*, for appellees, cited Duncan v. Alt, Loomis's Appeal, *supra*.

The opinion of the court was delivered, January 4th 1869, by

READ, J.—The widow of a deceased testator, in case she elects not to take a devise or bequest under her husband's will, takes her dower at common law, and her share of the personal estate of her husband under the intestate laws of the Commonwealth. Her dower and her share of the personal estate thus taken are paramount and prior to the will, which in such case only operates upon the real estate subject to her dower and upon the personal estate left after her share is taken out. In case therefore of a deficiency of the remaining personal estate to pay all the legacies, there must be an abatement of all the general legacies proportionally, unless some priority is established, the onus being upon any one claiming it. The claim of dower settles itself, and the case most nearly resembling that relating to the personal estate is the provision made by the 15th section of the Act of the 18th April 1833, in the case of a widow married or a child born after a will made and not provided for in such will, in regard to whom such testator shall be deemed and construed to die intestate, and such

widow shall be entitled to such purparts, shares and dividends of the estate, real and personal, of the deceased as if he had actually died without any will.

In Mitchell *v.* Blain, 5 Paige Ch. Rep. 588, it was held, under a similar enactment, with however a provision that the child "shall be entitled to recover from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will," that all the devisees and legatees must contribute rateably in proportion to the value of the real or personal estate devised or bequeathed to them respectively, to make up the distributive share of the post-testamentary child. And in making such contribution no distinction is to be made between specific, general and residuary legacies, but each legacy is to abate rateably in proportion to its amount or value.

"It was not intended," says the chancellor, "to disturb the arrangements which the testator had made in the disposition of his property among the several objects of his bounty, except so far as to compel each to contribute rateably out of that which he would be entitled to according to the will, for the purpose of making up the distributive share of the post-testamentary child. The legacies must therefore abate in proportion to their amount and value, so that the residuary legatee shall only pay his rateable proportion with the general and specific legacies."

In this case the only estate of the testator before the court was his personal estate, and the directions of the statute are clear and positive. In Pennsylvania there is no such provision in relation to the payment to the widow electing to take her share under the intestate law, instead of the bequests or devises under the will of her husband. The legacies to the three daughters must therefore be paid out of the personal estate, and there being a deficiency of it caused by the election of the widow, the question raised by these appeals is whether these legacies have a priority of other dispositions of that fund, and must be first paid in full, without any abatement, which is the position assumed by them, and upon which ground they ask a reversal of the decree of the Orphans' Court so far as regards their legacies.

Michael Bard, the testator, died May 11th 1865, having made a will which has been duly proved, dated the 23d April, in the same year, and leaving a widow, Martha Bard, and five children by a former wife, to wit: three daughters; Annie intermarried with Roland H. Brubaker.; Ecedora intermarried with John Townley, and Susanna intermarried with William Drybread; and two sons, Jefferson S. Bard and William M. Bard; William was in his thirteenth year at the time of the death of his father, and Jefferson came of age in July 1866, and was married in December of the same year.

The auditors appointed by the Orphans' Court to distribute the

balance, in their report say "the widow of the testator refuses to take under the provisions of the will, and claims her rights at law. The estate is not sufficient to pay the widow and all the legacies," and their conclusion is "that all the devises and bequests must abate pro rata," and they accordingly report that the three appellants, in common with the other devisees and legatees, are only entitled to 74.251 per centum of the respective legacies, which is affirmed by the court, from which decree these appellants have appealed and assigned two errors, both of which may be condensed into one. That the court should have decreed their legacies to be paid in full, with interest.

By the 7th and 8th items of his will, the testator gives to his executors in trust for the use of his daughter Annie and her issue, "$4000, the interest of which, at 5 per cent., shall be annually added to the principal, so long as her present husband shall live, unless her death should sooner occur; but in case she becomes a widow, then my executors shall annually, on the 1st day of April, pay the interest of the preceding year to her, and at her death, if she leaves issue, or the descendants of such, the principal sum, with the accumulated interest, shall be paid to such issue or descendants." And he gives to his executors in trust for the use of his two daughters, Ecedora and Susanna, each the sum of $5000, the interest of which, at 5 per cent., shall be annually, on the 1st day of April, paid to them, and at the death of either, the principal, with its accumulated interest, shall be paid to the issue of such decedents or the descendants of such issue.

Then follows a provision for the payment of taxes or expenses upon said trust-moneys, and it is further provided if either of his daughters should die without leaving issue, or the descendants of such, the amount so held in trust for her shall be distributed in equal shares among his other children, or the descendants of such as may be dead.

The personal estate is sufficient to pay these three legacies in full, unless the 3d item in the will is brought in upon an equal footing with them.

The 3d item directs "that if my son Jefferson gets married, or wishes to farm for himself before William is of age, my executors shall buy a farm for him some place in the neighborhood, which in the whole shall be about equal in value to my mansion, and get the title for the same made from the vendor to my said son Jefferson, his heirs and assigns, and pay the same out of my estate, and in that case, if there should not be sufficient funds on hand besides what in hereinafter bequeathed for the use of my daughters, my executors shall sell my brick house and lot in New Holland, which I bought from the assignee of S. R. Groff and wife, and execute a legal deed of conveyance for the same to the purchaser, his heirs and assigns, which shall be valid in all respects."

"A pecuniary legacy," says C. J. Gibson, "may undoubtedly be exempt from abatement, as in the case of a wife or child destitute of other provision, or of a legacy given in lieu of a dower or of a preference manifestly intended:" Duncan *v.* Alt, 3 Penna. Rep. 382.

The language of the will leaves no doubt that a preference was manifestly intended in favor of the three daughters and their issue, whose legacies were to be first paid before any of the funds on hand should be appropriated by the executors to buy a farm for Jefferson.

With this plain·construction of the will it is clear that the Orphans' Court were in error in not awarding to the executors in trust for the three daughters of decedent the full sums bequeathed to them in the will with interest.

It is therefore ordered and decreed that so much of the decree of the Orphans' Court as regards the legacies of the appellants be reversed, and it is hereby ordered and decreed that Christian S. Hoffman and E. G. Groff, executors of the will of Michael Bard, deceased, and trustees under his will of his several daughters and their issues, do hold in trust for his daughter Annie, and her issue, the sum of $4000, together with interest thereon, at 5 per cent. per annum, from the 1st day of April, A. D. 1866, to answer the provisions of the 7th clause of the will of the said Michael Bard, deceased, and that they hold the further sum of $5000 to answer the legacy bequeathed to them in trust for Mrs. Ecedora Townsley and her issue, and the further sum of $5000 to answer the legacy bequeathed to them in trust for Mrs. Susanna Drybread and her issue, and that they pay to said Ecedora Townsley and Susanna Drybread out of the estate of the testator the interest accrued upon their respective trust-funds at the rate of 5 per cent. per annum, from the 1st day of April, A. D. 1866, in accordance with the terms of the said will, and that the costs of this appeal be paid out of the estate of Michael Bard, deceased.

The record is remitted to the Orphans' Court to carry this decree into full effect.